# SIGGERS *v.* SNOW.

APPELLATE PRACTICE; SPECIAL APPEALS; INJUNCTIONS
PENDENTE LITE.

1. Only the order appealed from, and not any previous order in the cause, is proper for consideration upon special appeal, unless the order appealed from necessarily involves the merits of preceding orders, *distinguishing* Parsons v. Hill, *ante*, p. 532; so that where a special appeal is taken from a temporary restraining order, but is not perfected, but from a supplemental order in the cause passed to render the temporary restraining order more full and explicit, a special appeal is taken and perfected, and a special appeal is also allowed from an order overruling a motion to dissolve the temporary restraining order upon the assumption by the court that the latter appeal is necessary for the consideration of the former appeal, it will be presumed by this court that the temporary restraining order was a proper one to be passed in the cause and it will not be reviewed on the appeal from the order denying the motion to dissolve.

2. Where, on the termination of a partnership for the practice of patent law an agreement for the division of the business was entered into which contemplated the continued use by one partner of the firm name, and an injunction *pendente lite* was granted restraining the other partner from advertising himself as the successor or representative of said firm, or from intimating that said firm was no longer in business, and subsequently, it being shown that advertisements and communications sent out by the other partner naturally tended and were intended to create the impression that the firm had ceased to do business and that he had succeeded to its business, a supplemental order was passed, enjoining him from using the firm name, except in sending out the general letter provided for in the agreement, or by sending ont an advertisement in a prescribed form in substantial conformity with said letter, or by using on his card after his name in uniform type the words "late of the firm of S. & Co.," it was *held*, on appeal specially allowed from said last order, that the order should be so modified as to apply only to communications in the course of business, or made so as to affect the business of the parties; and as so modified, *affirmed*.

Nos. 936 and 940. Submitted January 4, 1900. Decided January 17, 1900.

HEARING upon two appeals by the defendant from interlocutory orders of the Supreme Court of the District of Columbia, in a suit for an injunction. *One order modified, and, as modified, affirmed; and the appeal from the other dismissed.*

The facts are sufficiently stated in the opinion.

*Mr. A. S. Worthington* and *Mr. Charles L. Frailey* for the appellant.

*Mr. R. Ross Perry* and *Mr. R. Ross Perry, Jr.,* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

These are two special appeals allowed from two several interlocutory orders rendered in a cause pending between the parties in the Supreme Court of the District of Columbia.

It appears that since the year 1875 the appellee, Chester A. Snow, has been engaged in the practice of the patent law in this District; that between the years 1878 and 1884, he conducted the business under the name and style of "C. A. Snow & Co.," although contrary to what the name would seem to imply, he had no partner in the business, such practice apparently not being unusual; and that in the year 1884, he entered into partnership with the appellant, Edward G. Siggers, for the prosecution of the same business under the firm name and style of "C. A. Snow & Co."—that is, the firm name was the same under which the appellee had previously conducted the business for himself alone. The appellant at first was to receive one-tenth of the profits; but during the course of the partnership, which continued until May 1, 1899, his share was increased to one-third.

Dissension seems to have arisen between the parties; and on April 19, 1899, a formal agreement was executed by them for the termination of the partnership on the first day of the following month and for the settlement of the partnership affairs. By this agreement it was stipulated that all

unfinished business of the firm, in which any payment of
money had been made by clients, should be divided between
the parties, in accordance with a certain prescribed plan, in
the proportion of two-thirds to the appellee and one-third to
the appellant; and that all unfinished business, in which
there had been no payment of money by clients, and all
new business which should thereafter come addressed to the
firm, should belong to the appellee, in consideration of which
the latter was to pay to the appellant the sum of ten thou-
sand dollars, which it is conceded has been paid.    By the
agreement it was further stipulated that all the corporeal
property of the partnership, including therein a monthly
paper published by the parties, in connection with their
business, intended to give information on patent matters
and known by the name of "The Inventive Age," and also
a printing press and certain newspaper correspondence,
should be sold at auction to the highest bidder, the bidding,
however, being reserved to the two parties, and that the pro-
ceeds of sale should be divided between them in the pro-
portion of two-thirds to the appellant and one-third to the
appellee.    All the books and papers of the partnership were
to remain the property of the appellee, with the right on
the part of the appellant to have reasonable access thereto
as he might require; and all stationery was to be destroyed
upon which the names of both the parties were printed.

Under the auction sale provided to be made of the cor-
poreal property of the partnership, or by mutual agreement
of the parties, the appellant became the purchaser of the
paper designated as "The Inventive Age," and the appellee
became the purchaser, among other things, of a considerable
amount of stationery, some electroplates, and two sign-boards
in front of the office of the firm, all bearing the designation
of " C. A. Snow & Co."

The division of the unfinished business of the firm pro-
vided for by the agreement involved an assignment of the
clients of the firm between the parties which was entirely

arbitrary, so far as the clients were concerned; and it was anticipated that some of the clients might not be satisfied with the arrangement. Accordingly it was provided in the agreement that a general letter, to be signed by both parties individually, should be sent to each client to inform him of the arrangement, and to elicit his preference, if he desired a change, in which event his business would be transferred to the partner for whom he would express such preference. And it was stipulated between the parties that neither one, should communicate directly or indirectly with any of the clients in such manner as to influence his choice.

It was in connection with this matter of the assignment of clients and of communication with them that, almost immediately after the dissolution, the troubles arose which led to the present legal proceedings.

On June 19, 1899, the appellee filed his bill in equity for an injunction against the appellant to restrain alleged violations of the articles of agreement by the latter, which violations were stated substantially to consist in improper communications from the appellant to the clients contrary to the letter and the spirit of the agreement, and in representations to the effect that he, the appellant, was the representative and successor of the firm of C. A. Snow & Co., which was assumed to have gone out of business. It is understood that this suit was soon followed by a counter proceeding instituted in the same court ⸌by the appellant against the appellee, alleging similar violations of the agreement by the appellee, and seeking a similar injunction against him. And it is further understood that somewhat similar proceedings were subsequently had in both causes; that upon these proceedings the two causes were heard together by the court below; and that similar injunctions *pendente lite* were issued in both causes. But the cause of the appellant as complainant against the appellee as defendant in the court below has not yet been brought to this court, and it is only matter of reference in the present case.

After answer filed in the present case by the appellant as defendant, an injunction *pendente lite* was granted against the appellant on July 13, 1899, to restrain him from representing or advertising himself as the successor or representative of the firm of C. A. Snow & Co., and from intimating that said firm is no longer in business, and from communicating with the clients of that firm otherwise than as prescribed in the articles of agreement of April 19, 1899; but with the proviso that he might advertise in The Inventive Age that he was the publisher of that paper as the successor of C. A. Snow & Co., and with some other provisos not necessary to be here mentioned.

From the order granting this injunction *pendente lite*, the appellant prayed and was allowed an appeal to this court; but the appeal was abandoned, and was not further prosecuted.

Subsequently, on petition filed by the appellee alleging and setting forth certain violations of the injunction by the appellant, and praying for a rule upon the appellant to show cause why he should not be punished for contempt, and upon the issue of such rule and answer thereto by the appellant, the court below, on August 16, 1899, without any direct action on the question of contempt, passed a supplemental order in the cause for an injunction *pendente lite*, in which it was sought, as stated in the supplemental order itself, to render the previous order of July 13, 1899, more full and explicit. And in this supplemental order it was provided that the appellant and his agents should be enjoined from using in any way the name of C. A. Snow & Co., except by sending out the general letter to clients which has already been mentioned, or by sending out an advertisement in prescribed form in substantial conformity with such general letter, or by using on his card after his own name in uniform type the words " late of the firm of C. A. Snow & Co." This last provision had reference to an advertisement that appeared in The Inventive Age in

May, 1899, announcing in large type the dissolution of the firm of C. A. Snow & Co., and seeking to convey the impression in the body of the advertisement, as it is claimed, that the complainant, the appellee, had ceased to practice.

From this order of August 16, 1899, the appellant sought and was allowed a special appeal to this court.

Subsequently, on October 7, 1899, without any further change whatever in the situation or the occurrence or discovery of any new facts, the appellant moved to dissolve the order for an injunction *pendente lite* issued on July 13, 1899; and the motion was denied on October 10, 1899. And from the order denying the motion a special appeal was sought and was allowed by this court.

These two appeals are now before us for consideration.

The allowance by this court of the special appeal from the order of the court below of October 10, 1899, was based upon the assumption that this second appeal was necessary for the consideration of that which had been previously allowed. But so far as by this second appeal it is sought to bring before us for review the merits of the order of July 13, 1899, which was the original order for injunction *pendente lite,* we do not think that it is proper to be considered by us. The appeal from that order was abandoned by the appellant; and to that extent and for the further purposes of the suit, the order itself was acquiesced in by the appellant. It is now too late for him to appeal from it; and we can not sanction that to be done by indirection which can not be done directly. The order of July 13, 1899, therefore, can not be reviewed on this appeal.

It is true that in the case of *Parsons* v. *Hill,* recently decided by this court at its present term (*ante,* p. 532), a somewhat similar situation was presented; and we held that it was proper to review an order vacating a writ of summons, although the appeal allowed was not directly from that order, but from a subsequent and distinctly inde-

pendent order. But we were careful in the opinion in that case to base our action on the special circumstances of the case. No such special circumstances exist here; nor are there any circumstances in the case that would warrant a departure from the reasonable rule that only the order appealed from, and not any previous order in the case, is proper for consideration upon special appeal, unless the order appealed from necessarily involves the merits of preceding orders. The allowance of special appeals as provided in the statute creating this court, while intended to further the speedy administration of justice, must be carefully guarded so as not to frustrate that purpose or to interfere with the orderly administration of justice. It is not often that the merits of a cause can be determined in an interlocutory proceeding or upon appeal from an interlocutory order; and there is always danger that the utterances of an appellate court in an interlocutory appeal may unduly prejudice the further proceedings in a cause, in which perhaps the testimony may develop a condition of things substantially different from that which was before the court on the interlocutory appeal. It should, therefore, be made very clearly to appear that the ends of justice will be subserved by the allowance of a special appeal, when it is sought to review an interlocutory proceeding; and it is scarcely possible that this can be done, where the order appealed from is, as in this case, a mere formal order, and does not of itself involve the merits of the cause.

Passing to the appeal allowed from the order of August 16, 1899, we find great difficulty in dealing with that order here. For the reasons which we have stated we can not now review the order of July 13, 1899; and it is not easy to see how we can deal with the supplemental order when we can not review the order upon which the supplemental order depends. It would be different, of course, on an appeal from a final judgment or decree upon the merits of a

cause; for then the whole record is before the court for review. But, as we have intimated, we scarcely think that we are ordinarily at liberty to search the whole record and review it so far as it has been made, in the case of an interlocutory appeal. So far as it is necessary for the consideration of the appeal, it is, of course, all open for examination, but not necessarily for correction, if it is alleged that there has been error committed in some previous stage of the case.

Assuming, therefore, as we think we should assume on this appeal, that the order of July 13, 1899, was right and proper, and that the appellant should have been enjoined as he was enjoined by that order, we find the only question for our consideration to be, whether the order of August 16, 1899, was a proper supplement to the previous order; and about this we have no serious doubt. It is very clear to us that while the appellant may have kept himself within the letter of his agreement, and possibly even within the strict letter of the law and of the injunction of July 13, 1899, yet undoubtedly his advertisements and his communications to the clients of the firm of C. A. Snow & Co. naturally tended to give the impression, and were intended to give the impression, that C. A. Snow & Co. had ceased to do business and that he was the sole successor to it and to all its business. This is a case of false impression produced by telling the truth, but not the whole truth. The original source of the trouble, of course, was in the fact that the appellee had previously conducted business for himself under what was apparently the name of a firm, and that this designation was not changed, but remained the same, after the institution of the partnership between the appellee and the appellant. It was evidently contemplated and understood by the appellant that the appellee intended, either by himself or in partnership with others, to continue the same business, or the same kind of business, at the same office, under the same style and apparent firm name of C. A. Snow & Co.

This is abundantly shown by the agreement of April 19, 1899. So, while it was true that the firm of C. A. Snow & Co., as composed of the appellee and appellant, was dissolved and at an end and no longer had existence, and might properly be referred to as the late firm of C. A. Snow & Co., yet the impression was not true, which the appellant's advertisements sought to create, that there was no longer any person or persons doing business under the firm name of C. A. Snow & Co. That such would be the impression created in the ordinary mind ignorant of the facts, is too clear for argument; and that such was the impression actually created in some, at least, of the clients of the firm, is sufficiently shown by their letters, which have been filed in evidence. The case is clearly one of the suppression of the truth, when the truth should have been fully told ; and no argument is required, and no citation of authority is necessary, to show that the suppression of the truth under circumstances which demanded that it should be spoken, equally with the assertion of that which is false, may constitute an injury for which a court of equity will afford relief. And this being so, it was entirely right and proper to superadd to the negative restraints of the order of July 13, 1899, positive and mandatory directions such as are contained in the order of August 16, 1899.

It must be conceded, however, that while the spirit and purpose of these mandatory directions are fully justified by the circumstances of the case, as thus far manifested on the record, the terms of the directions are in some respects too general and too sweeping. The appellant is enjoined from using the name of C. A. Snow & Co. in any way whatsoever other than by sending out the circular letter which has been mentioned. Taken literally, this would preclude the appellant from using that designation even in a private letter or in private conversation, or, as has been suggested by counsel, even in the brief filed on behalf of the appellant in this

cause. Of course, the order was not intended to have any such scope or effect. But inasmuch as it is capable of such construction, and may therefore be used in a way needlessly to embarrass the appellant, we think that it should be so qualified as to apply only to communications in the course of business, or made so as to affect the business conducted by the parties. The order, therefore, should read substantially as follows:

" This cause coming on to be heard, etc., etc., it is ordered and decreed, etc., etc., that Edward G. Siggers, the defendant therein, his agents, employees and attorneys, and each and all of them, be, and they are hereby, enjoined from using in any manner in any pamphlet, paper, letter, publication, or in any other way whatsoever (in the course of business, or made so as to affect the business conducted by the parties), the name of C. A. Snow and Company, etc."

We think that, as thus modified, the order should be affirmed with costs.

The cause will be remanded to the Supreme Court of the District for such further proceeding therein according to law as may be just and proper.

In cause No. 936, therefore, the order appealed from will be *affirmed, with costs ;* and in cause No. 940 the appeal will be *dismissed, with costs.*